IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ADAMS,

        Plaintiff,                        No. CIV S-04-0694 DFL KJM P

      vs.

TERESA SCHWARTZ, et al.,

        Defendants.                 FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. In his amended complaint, he alleges that defendant Fisher prevented plaintiff from receiving his insulin in a timely manner, which caused injury to his eyes and kidneys. Amended Complaint (Am. Compl.) at 4. Defendant Fisher has filed a motion for summary judgment.

I. Summary Judgment Standards Under Rule 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On October 26, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. Facts

Plaintiff is a brittle diabetic who receives insulin twice a day. Deposition of Benjamin Adams (Adams Depo.) at 11, 13. At least since February 2003, he and the other brittle diabetics received their first insulin shot around 5:30 a.m., as soon as count cleared. Id. at 13. Plaintiff had a medical treatment card, which gave him access to the B-1 medical clinic after morning count and in the evening for glucose monitoring and insulin injections. Id. at 16; Fisher Decl. ¶ 4.

Defendant Fisher is a Lieutenant at the California Medical Facility where plaintiff is housed. Declaration of Lt. M. Fisher (Fisher Decl.) ¶ 2. He is not involved in medical care or treatment. Id. ¶ 7.

In August 2003, Fisher was instructed by Captain McDonald, who was then his supervisor, to change the release schedule for inmates needing medical treatment. Id. ¶ 4. According to Fisher, the staff at the B-1 clinic was unable to handle the number of inmates who would converge on the clinic and the large number of inmates gathered in one place posed a security risk. Id. He consulted Dr. Andreasen, who confirmed that the change of schedule was not medically contraindicated. Id. ¶ 5.

Defendant Fisher intercepted plaintiff one day as he was heading toward the clinic and said plaintiff could no longer receive his insulin in a timely fashion. Adams Depo. at 15. Since then plaintiff has received his morning insulin any time between 6:30 and 10:00 a.m., but has never been denied his insulin. Adams Depo. at 13, 15, 23.

When plaintiff receives his insulin shot at different times on successive mornings, he gets nervous, begins to shake and gets headaches. Id. at 45. Plaintiff believes that the deterioration of his eyes and other organs has been hastened by the change in his insulin schedule. Id. at 46.

Drs. Mehta and Aguilera, doctors at California Medical Facility, have averred that the variation in plaintiff's insulin schedule was not medically significant and that plaintiff's

4

blood sugar level has been consistently below the seven percent recommended by the American Diabetes Association.  Declaration of N. Aguilera (Aguilera Decl.) ¶¶ 4, 8, 9; Declaration of D. Mehta (Mehta Decl.) ¶¶ 2, 7, 8; Motion for Summary Judgment (MSJ), Ex. A (lab reports re: plaintiff's blood sugar level).[1]

III. Analysis

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs.

> In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain. " Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

<u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); <u>see also</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir.1992), <u>overruled in part on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir.1997).  There is no Eighth Amendment violation, however, if any delay in treatment is not harmful.  <u>Shapley v. Nevada Bd. Of State Prison Com'rs</u>., 766 F.2d 404, 407 (9th Cir. 1985).  Unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care.  <u>McGuckin</u>, 974 F.2d at 1062.

---

[1] Although one of the lab reports attached to defendants' motion appears to indicate one test result above the seven percent cap, MSJ, Ex. A at 1, this does not change the result reached below.  <u>Cf.</u> note 2 <u>infra</u>.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

Id. at 1060. An inmate with diabetes has a serious medical need. Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990).

Plaintiff has alleged that the change to a variable insulin schedule has caused him to suffer headaches and dizziness and has led to a quicker deterioration of his organs; that his blood sugar level is within recommended levels does not necessarily negate the harm plaintiff has attributed to the variable insulin schedule. Nevertheless, plaintiff has not shown that defendant Fisher was deliberately indifferent to plaintiff's medical needs. Plaintiff has provided nothing suggesting that he informed defendant Fisher of the problems that the variable schedule caused, that defendant Fisher was in such close contact with plaintiff that he would have been aware of the problems, or that defendant Fisher had any medical background that might have alerted him to the problems. Compare Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999) (summary judgment not appropriate for jailer who delayed inmate's care for diabetes when plaintiff averred he complained to defendant and when his symptoms would have been obvious to jailer in day-to-day contact with inmate); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (warden not

deliberately indifferent when he did not have medical training and therefore could not interpret diagnostic decision inmate complained about). Moreover, defendant Fisher consulted with Dr. Andreasen before changing plaintiff's treatment schedule and relied on the doctor's assurance that the change would not harm the inmates.[2] There is no disputed issue of fact on the subjective prong of the element of deliberate indifference. Defendant Fisher is entitled to summary judgment.

      IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be granted.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2007.

_____
U.S. MAGISTRATE JUDGE

2/adam0694.57

---

[2] The court is not considering Dr. Andreasen's statement to defendant for its truth, but rather as it bears on defendant's state of mind. See Orsini v. O/S SEABROOKE O.N., 247 F.3d 953, 960 n.4 (9th Cir. 2001). Accordingly, plaintiff's attempts to suggest that Dr. Andreasen's opinion has changed since he wrote chronos in another inmate's case do not undercut defendant Fisher's reliance on it.

7